# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSEPH ANTONETTI,

      Plaintiff,

v.                                            No. 21-cv-279-DHU-SMV

FNU SANTISTEFAN, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

THIS MATTER is before the Court on Plaintiff Joseph Antonetti's Prisoner's Civil Rights Complaint (the "Complaint") (Doc. 1). Plaintiff is an inmate of the Penitentiary of New Mexico, in the custody of the New Mexico Corrections Department ("NMCD").  He is proceeding pro se and in forma pauperis.  Plaintiff claims that he was deprived due process in a disciplinary hearing and raises several constitutional challenges to the conditions of his confinement.  Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to file an amended civil rights complaint as to his conditions of confinement claim.  His challenges to the disciplinary process must be raised in a separately filed habeas action under 28 U.S.C. § 2241.

I.      Facts.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes without deciding that the allegations in the Complaint are true. Plaintiff is a prisoner in the custody of NMCD pursuant to the Western Interstate Compact Agreement. (Doc. 1 at 4). Currently he is housed in the Penitentiary of New Mexico ("PNM"). The allegations in the Complaint arise,

apparently, from his experiences at Lea County Correctional Facility ("LCCF") and PNM. (Doc. 1 at 4). The named defendants are NMCD, LCCF Warden Santistefan, Prison Warden of Security Martinez, LCCF Warden Brown, LCCF Lieutenant Buckalew, Director of Prisons John Gay, Geo Corporation, NMCD Secretary Alisha Lucero, prison guard STIU Etter, prison guard STIU Mendoza, SHO Uyoun, Captain Chavez, CSW Gomez, prison caseworker Gomez, FNU Duran, and John Does 1-15.

Plaintiff's Complaint contains two categories of claims: a challenge to disciplinary proceedings against him and the resulting punishment, and constitutional challenges to the conditions of his confinement.  Plaintiff's claims arising from the disciplinary proceedings are governed by 28 U.S.C. § 2241. These claims will be dismissed without prejudice to Plaintiff's ability to file a habeas action. The conditions of confinement claims are properly raised in a civil rights complaint, but because the Complaint is essentially a shotgun pleading—thirty-four pages challenging virtually every aspect of prison life without adequately connecting the conduct of the 30 defendants to the alleged violations of Plaintiff's constitutional rights, it does not survive initial review. If Plaintiff chooses to file an amended civil rights complaint, he should endeavor to follow the legal standards set forth herein, including the pleading requirement of Federal Rule of Civil Procedure 8(a)(2), which requires a plaintiff to set out a short and plain statement showing his entitlement to relief.

II.      Discussion.

   A.   Standard of Review.

Where, as here, an inmate files a civil rights complaint against government officials, the Court screens the claims under 28 U.S.C. § 1915A.  Under § 1915A, the Court must dismiss a prisoner civil action *sua sponte* "if the complaint ... is frivolous, malicious, or fails to state a claim

on which relief may be granted." 28 U.S.C. § 1915A(b).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Because he is *pro se*, the Court construes Plaintiff's pleadings "liberally" and holds them "to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.*  It does not mean, however, that the court should "assume the role of advocate for the pro se litigant." *Id.*

B.  Challenges to the Execution of a Sentence Must be Brought Under 28 U.S.C. § 2241

Plaintiff alleges that that in February 2020, he was charged with a disciplinary infraction for failing to submit to a urinalysis drug test. (Doc. 1 at 5). He alleges that the circumstances underlying the disciplinary charge were essentially a production created through the concerted effort of guards and prison staff who held a grudge against him and wanted to retaliate—either on their own behalf or to help their "buddies."  (Id. at 5-7).  Thus, he alleges, the officers involved plotted to "make disciplinary charges stick" against him, ignored/failed to abide by NMCD protocol governing the administration of drug tests, and lied on the disciplinary report — collectively providing a false narrative against him.  (Id. at 6-7). He alleges that in the disciplinary proceedings that followed, he denied due process, was punished more severely than others in

violation of his equal protection rights, was subject to retaliation for seeking a fair hearing and pursuing an appeal. (Id. at 5-7). Plaintiff alleges that Defendants Gay, Lucero, and Santistefan denied him an impartial appeal to retaliate against him for exercising his right to appeal. (Id. at 8). He alleges, further, that the outcome of the disciplinary hearing and the appeal were predetermined by all defendants involved. (Id. at 9).

Plaintiff also alleges due process violations in the context of a disciplinary action and resulting punishment in July 2020 arising from an allegation that he assaulted another inmate. (Id. at 20-22). Plaintiff alleges that he was denied due process, defendants used false evidence against him, and that the officials who conducted the hearing and reviewed his appeals were biased. (Id. at 22).

These claims cannot be raised in a civil rights action; they must be brought in a habeas corpus proceeding. *McIntosh*, 115 F.3d at 811-12. 28 U.S.C. § 2241 is the means by which state prisoners may collaterally attack the execution of their sentences in federal court. *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000); *Davis v. Roberts*, 425 F.3d 830, 833 (10th Cir. 2005); ("[A] challenge to the execution of a sentence should be brought [as a habeas petition] under 28 U.S.C. § 2241."). Challenges to prison disciplinary proceedings, including due process claims and claims concerning the deprivation of good time credit, constitute an attack on the execution of a prisoner's sentence. *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997). The Court will mail Plaintiff a blank § 2241 habeas petition which he may use to commence a separate habeas action.

C.   Challenges to the Conditions of Confinement Under 42 U.S.C. § 1983.

In contrast, to a habeas proceeding, "a civil rights action . . . attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions." *Rhodes v.*

4

*Hannigan*, 12 F.3d 989, 991 (10th Cir.1993). The Complaint includes numerous constitutional challenges implicating the conditions of Plaintiff's confinement, including alleged violations of the First, Fourteenth and Eighth Amendments, discussed in greater detail below.  (Doc. 1 at 4). Such claims arise under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. It allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. *Id.*

A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). To state a viable claim a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

1.  <u>The New Mexico Department of Corrections is not a "Person" Under § 1983.</u>

Plaintiff has identified NMCD as a defendant in this lawsuit.  To the extent that Plaintiff intended to state a claim under § 1983 against the NMCD, the claim is not cognizable. § 1983 permits claims against a "person" acting under color of state law. It is well-established that the state—and by extension its executive departments and agencies—is excluded from the definition

of "person" in the context of § 1983. *Hern v. Crist*, 735 P.2d 1151, 1155 (N.M. Ct. App. 1987) ("[T]he Department of Corrections is not a 'person' within the meaning of Section 1983."); *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) ("arms of the state" such as state agencies "partake in the State's [sovereign] immunity[.]"). Any §1983 claim against NMCD must be dismissed.

      2.    <u>Plaintiff's Claims Against GEO Group are Inadequately Pled.</u>

To the extent Plaintiff seeks to state a claim against GEO group under § 1983, he has not pled sufficient facts to support such a claim. To succeed in a § 1983 action against a corporate entity, a plaintiff must prove that a corporate employee or agent, acting in conformity with a policy or custom of the corporation deprived him of his Constitutional rights. *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690-95 (1978); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). "Custom" in this context refers to "persistent and widespread discriminatory practices of state officials" that are not authorized by written law" but "could . . . be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691.

Geo Group may only be held liable for its own deliberate conduct—*i.e.*, policies Geo Group itself established and/or implemented. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). To the extent Plaintiff alleges the existence of policies that underlay violations of his constitutional rights, the allegations are conclusory and vague. The Court cannot discern, for example, what the policy is or who among the numerous defendants, of which Geo group is only one, is allegedly responsible for establishing or implementing any policy alluded to, but not identified, in the Complaint. Such allegations are not entitled to a presumption of truth.

*Ashcroft*, 556 U.S. at 681 (conclusory allegations are not to be assumed true). To the extent Plaintiff has failed to identify a Geo policy that underlay a violation of his constitutional the claims it will be dismissed.

       3.   <u>Official Capacity Claims</u>.

To the extent Plaintiff seeks to state claims against any state official (for example NMCD Alicia Tafoya-Lucero and Director of Prisions John Gay) in their official capacities, the claims must be dismissed. A suit against a "state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself." *Id.* And while Ms. Tafoya-Lucero and Mr. Gay, literally, are persons, "neither a State nor its officials acting in their official capacities are 'persons'" subject to liability under § 1983.

       4.   <u>Violations of NMCD Policy Are Not Actionable Under § 1983.</u>

Throughout the Complaint, Plaintiff alleges that Defendants' conduct violated several NMCD policies pertaining, *e.g.*, to drug testing and confinement in restrictive housing. These alleged policy violations are not actionable under § 1983. *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (Alleged violations of prison regulations are not cognizable under § 1983); *Lehman v. McKinnon*, 2021 WL 4129229, *4 (10th Cir. Sept. 10, 2021) (same); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."). This is because prison regulations and administrative policies are not intended "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). Instead, they are "primarily designed to guide correctional officials in the administration of a prison[.]" *Id.* at 481-82. To the extent Plaintiff seeks relief for alleged policy violations, the claims are not cognizable under § 1983 and must be dismissed.

5.     Plaintiff Failed to Allege How Individual Defendants Violated his Constitutional
Rights.

To the extent the Complaint purports to state claims against the named individual defendants, the claims must be dismissed. The allegations in the Complaint do not show specific conduct undertaken by specific individuals allegedly in violation of Plaintiff's Constitutional rights. To state a viable claim against any individual defendant, Plaintiff must allege specifically what conduct undertaken by what defendant violated his constitutional rights. Without this degree of specificity, the defendants do not have adequate notice of the claims against them. *See Robbins*, 519 F.3d at 1250 (The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly.). Plaintiff's generalized, conclusory, and vague allegations that the defendants are responsible for the violations do not suffice. *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249-50 (10th Cir. 2020) (A plaintiff must "do more than show that [his] rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those violations."); *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) ("When various officials have taken different actions with respect to a plaintiff, [a] passive-voice [allegation] that his rights 'were violated' will not suffice" nor will an "active-voice yet undifferentiated contention that 'defendants' infringed on his rights.").

Likewise, as to the "John Does," the Tenth Circuit has "recognized the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served." *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996). Plaintiff has not included a description of the 15 unnamed defendants sufficient to satisfy this requirement. Nor has Plaintiff alleged conduct violative of his constitutional rights undertaken by the unknown defendants under color of state

law. With no description of who the defendants are or what they allegedly did in violation of Plaintiff's constitutional rights, the claims are not cognizable.

    D.  <u>Leave to Amend</u>.

      Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint pertaining to his civil rights claims. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

      Plaintiff is advised that his amended pleading must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a *short and plain* statement showing his entitlement to relief and specifying the relief he seeks. "It is not the role of either the court or the defendant to sort through a lengthy, poorly drafted complaint and voluminous exhibits in order to construct plaintiff's causes of action." *McNamara v. Brauchler*, 570 F. App'x 741, 743 (10th Cir. 2014).

      Plaintiff is further advised of the following pleading standards applicable to his potential civil rights claims, which he should endeavor to follow in the event he chooses to pursue any of these claims in an amended complaint.

    1.  <u>The *Heck* Doctrine Bars Any Claims Implying the Invalidity of the Disciplinary Proceedings</u>.

      To the extent Plaintiff wishes to raise due process, equal protection, or other constitutional violations in an amended complaint, he is advised that he may only pursue such claims to the extent they do not implicate the validity of the prison disciplinary proceedings against him. A state prisoner's § 1983 claim that would necessarily imply the invalidity of their conviction or sentence must be dismissed "unless [he] can demonstrate that the conviction or sentence has already been

invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). This prevents a "collateral attack on a conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484. Pursuant to the "*Heck* doctrine" a prisoner cannot seek § 1983 damages related to a conviction or sentence, until he successfully challenges it in a state federal habeas proceeding. *Muhammad v. Close*, 540 U.S. 749, 751 (2004). The same is true of prison disciplinary decisions. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (extending the *Heck* doctrine); *see Cardoso v. Calbone*, 490 F. 3d 1194, 1199 (10th Cir. 2007) (recognizing that the *Heck* doctrine applies to "challenges to punishments imposed as a result of prison disciplinary infractions."). As discussed earlier, any challenge to the process or fairness of the disciplinary proceedings must be raised in a separately filed habeas petition under 28 U.S.C. § 2241.

    2.  <u>Eighth Amendment Claims</u>.

The Eighth Amendment's Prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

To prove that prison conditions amount to cruel and unusual punishment, the plaintiff must satisfy an objective requirement and a subjective requirement. That is, he must prove (1) that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities"; and (2) that the prison official's state of mind was one of "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In other words, "a prison official cannot be found liable under the Eighth Amendment for

denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to innate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837.

      3.  <u>Free Exercise of Religion Claims</u>.

The First Amendment to the United States Constitution protects the free exercise of religion, the freedom of speech, the right to peaceably assemble, and the right to petition the Government for a redress of grievances. "[A] prison inmate retains those First Amendment rights that are not inconsistent with this status as a prisoner or with the legitimate penological objectives of the prison system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Accordingly, prison regulations and actions of prison officials that impinge on an inmate's First Amendment rights are valid "if [they are] reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) (same). In the Tenth Circuit,

> [i]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must first show that a prison regulation substantially burdened sincerely-held religious beliefs. Consequently, the first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held.

*Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (alterations, internal quotation marks and citations omitted).

      4.  <u>First Amendment Retaliation Claims</u>.

It appears that Plaintiff may seek to state claim of retaliation for exercising his First Amendment rights. "An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (italics omitted). Specifically, he must plead facts showing: "(1) that [he]

was engaged in constitutionally protected activity; (2) that the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to [his] ... constitutionally protected conduct." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018).

   5.   Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) Claims.

   Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government demonstrates that the burden furthers a compelling governmental interest and it is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1. "To proceed on a RLUIPA claim, a plaintiff must sufficiently allege facts plausibly showing that he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, and that exercise (3) is subject to a substantial burden imposed by the government." *Robertson v. McCullough*, 739 F. App'x 932, 936–37 (10th Cir. 2018); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010). A religious exercise is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Kay*, 500 F.3d at 1221 (quoting 42 U.S.C. § 2000cc-5(7)(A)). "[A] religious exercise is substantially burdened under 42 U.S.C. § 2000cc-1(a) when a government ... prevents participation in conduct motivated by a sincerely held religious belief[.]" *Abdulhaseeb*, 600 F.3d at 1315.

   6.   Access to the Courts.

   To state a claim based on the deprivation of the right of access to the courts, a plaintiff must identify a "nonfrivolous, arguable underlying claim." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 353 & n. 3 (1996). The plaintiff must describe the underlying cause of action, "whether anticipated or lost," and the official action that frustrated the

litigation. *Christopher*, 536 U.S. at 415. If the claim is based on a lost opportunity to pursue litigation, the complaint "must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.*; *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208 (10th Cir. 2004). If the claim is based on the plaintiff's inability to pursue litigation presently, he must identify the specific official conduct frustrating his efforts. *Jennings*, 383 F.3d at 1208.

       7.   Equal Protection.

The Equal Protection clause of the Fourteenth Amendment "directs that all similarly situated persons should be treated alike." *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018). To prevail in an equal protection claim, a plaintiff must show that prison officials treated him differently from similarly situated prisoners. *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019). This would require Plaintiff to allege facts showing that he was similarly situated to the comparator inmates and that the difference in treatment was not reasonably related to penological interests. *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006).

       8.   Supervisory Liability.

To the extent that Plaintiff may seek to state claims against the individual defendants based on a theory of supervisory liability, he must allege facts showing the supervisor was personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006). In other words, he "must first show the supervisor's subordinates violated the constitution. Then, [he] must show an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.*

IT IS ORDERED:

(1)     Each of the claims set forth in the Complaint (Doc. 1) is DISMISSED as set forth above.

(2)     Plaintiff is granted leave to file an amended civil rights complaint within thirty days of the entry of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

(3)     The Clerk's office should mail Plaintiff a blank 28 U.S.C. § 2241 habeas petition.

_____
UNITED STATES DISTRICT JUDGE